Mr. Davis, when you are prepared, please proceed. Thank you, Your Honors. May it please the Court, I'm Frederick Davis with Kutak ROK for Appellant EasyBank. This is an appeal to the District Court's order denying EasyBank and Solid's motions to compel arbitration. The underlying issue is whether APALE, BSI, and IBS are bound by the arbitration clause contained in the terms and conditions that control the use of that bank account, which they open through EasyBank and Solid at Evolve. In denying the motions to compel, the District Court erred in three ways. Not performing a choice of law analysis. Not delegating issues of arbitrability. Finally, ignoring the factual record to decide as a matter of law not to enforce the arbitration clause. The Court should reverse, compel arbitration, and the alternative, it should remain for fact-finding. While all three points on appeal merit your attention and require reversal, I'll address point three. As a threshold matter, there is no dispute that the Federal Arbitration Act applies. Below, EasyBank presented evidence that BSI reached out to EasyBank to open a bank account at Evolve and knew it was doing so. On April 14, 2022, EasyBank delivered to BSI account opening forms that referenced terms and conditions governing a bank account at Evolve. EasyBank then delivered, on April 18, in the same exact way, the Evolve account terms and conditions to BSI. The account terms and conditions contain arbitration agreement and state that use of the account means acceptance of the terms. What about the discrepancies that the District Court noted in terms of descriptions? It would have been obvious to someone reading the contract they were signing that they were obligating themselves under an arbitration clause entered into by other parties. Yes, I think the District Court ignored the factual context of what was the contract. It relied on an Arkansas case, Ingersoll, that really stands in opposition to arbitration. As you all know, after AT&T and Conception, state law that treats arbitration agreements differently should be struck down and is preempted by the Federal Arbitration Act. Some requirement that magic words are required, that the exact title of a document must appear in other pages of the same agreement. That's not true. It's not the law. It shouldn't be the law in Arkansas or in Tennessee. I think that's a bit of a red herring. While there are cases that appear, like Ingersoll, to say you need the exact title of the second writing, that rule would lead to absurd results. It ignores the factual issue of mutual assent and it ignores the context. EasyBank delivered the documents that there is no dispute BSI signed and agrees are binding contracts. IBS is in the same exact position. EasyBank delivered in the exact same messaging, the secure platform in one string of messages, both of these documents. It delivered the terms and conditions. So your argument is not that Arkansas law would not enforce this, but that Arkansas law is invalid based on... It's both. I think there's a progeny of cases under Georgia trading in Arkansas that clearly show the day of adversity to arbitration is over in Arkansas. There are cases like the AT&T versus Clark County case that is more recent than Ingersoll. While it adopts, I think, a pretty fair and black line recitation of the law that for cross-referencing purposes, it must be clear and unequivocal reference plus delivery of the document. I think that's probably true. And that's true in other states. This concept that it has to have exactly the title of a document to cross-reference is wrong and it doesn't make sense in the context of mutual assent, a factual question. In the context of this case, where the documents were delivered together before BSI returned... Did the industry court actually rule on the mutual assent argument or did it rule on the other basis of the specificity? That's a great point. It ruled on both, but you're right, Your Honor. This case is not just about incorporation by reference. This is a contract case. Was there mutual assent either through the typical way you find mutual assent by looking at the factual context or a shortcut is absolutely incorporation by reference? We qualify under both, but Your Honor, the district court erred because it ignored everything about the context of the contract and simply said, nope, the titles don't match. You lose on incorporation by reference. It did discuss the standard that mutual assent requires that the terms be communicated, effectively communicated, but in denying the motion to compel, it denied the argument which EasyBank made clearly that this is a separately binding contract just under general contract principles, the terms and conditions are. I'm looking at Judge Miller's opinion, and as I've read it, there's a bit of breeziness and lack of precision to it. He uses because and then he follows it off like what's a clear incorporation mean, and he talks about got different names and it fails to incorporate, blah, blah, blah, and then it gets to concluding that that's it. But it seems to me that there's more than that that may have been considered because his whole opinion is just sort of drafted in that way. And not unusual for district judges to do this kind of writing because they run a huge press of business. And does the way that he's structured that, does that mean that we are bound to find that all he did was say, oops, you don't got the same typeface and you don't have the same name and therefore you lose? Or can we go back into the documents and look at them together and say, is there a clear incorporation here or not? You can and you should, Your Honor. It's a de novo standard of review. You can review this just as the judge did. Of course, if you see a material factual issue, you would remand that to the district court for fact-finding. Here, we argue that there are no material factual disputes. Consider this under both standard contracting. Are all elements of the contracts present? Consider this under incorporation of reference. Under both standards, you can reverse and dismiss this case and compel arbitration. I wanted to ask, it's not just the same title. It's the same parties to some extent. There's multiple corporations here. And my understanding was wasn't the contract between Easy Bank and BSI and the other company? And then you give these terms and conditions that say Evolve Bank. And so if you compare them, it's really hard to say, even though there's a reference to terms and conditions, that those are the terms and conditions that would apply to your account. And that's why you look at the context, Your Honor. But BSI and IBS knew they were opening up bank accounts. They knew Easy Bank wasn't a bank. It's just a fintech company. And they knew they were opening up a bank account. And those account opening documents reference the terms and conditions delivered at the exact same time and otherwise made available to BSI and IBS. So it's very clear in the context. Look at mutual assent in the context of contract formation, also incorporation by reference. And look, these positions lead to absurd results. If you were to believe BSI and IBS or take their position, any party could sue another party, just not attach the contract or leave off the terms and conditions, and they'd win because if the underlying document doesn't exactly reference the other terms and conditions, you lose because the court's not even going to go and look at the rest of the context of mutual assent and contract formation. I'll reserve the remainder of my time. Thank you, Mr. Davis. Mr. Gilder? Actually, are we getting both appellants arguing?  Your Honor, Soled had reserved three minutes, one minute for including what? Four minutes. Do you wish to have an opening? I'm sorry? Do you wish to have an opening argument? I would like to very briefly. All right. I'm sorry. No problem. I thought you were a little surprised when I called you. Thank you. It may have pleased the court. Solid financial technology moved separately to compel arbitration. And I want to emphasize three reasons. Independent of incorporation, independent of incorporation, why the trial court should have compelled arbitration or at a minimum held a trial to determine whether there was communication of an arbitration clause and acceptance of an arbitration agreement. The first point is that the evidence, the evidence that is undisputed at this point in the record is that the first time BSI or IBS each logged into the EasyBank portal, there would have been a pop-up that would have shown the terms and conditions including the arbitration clause, number one. Number two, the terms and conditions were on the EasyBank portal even after the pop-up. And third, my client presented evidence of EasyBank's presentation of the terms and conditions as required by EasyBank's contract with my client and its acceptance by BSI and IBS. And I would submit that none of these things are really disputed here. If you look at the, first of all, IBS and BSI in their brief really say this is the same argument. They concede that this issue was fully addressed. But more importantly, the affidavit that IBS and BSI submitted, and I have difficulty with the pronunciation of the last name, but it's Javier Gorce. He never meets the point here of the pop-up on the website, the availability on the website. All he says is that we did not receive the agreement in the manner that, through the incorporation. That's really all he says. How does the pop-up work? It's a browse wrap, it appears. My understanding of it is that it popped up and it said if you continue to use this, or continue to bank or whatever, then you're accepting the terms and conditions. But I didn't see an example of the pop-up, like what the pop-up would say or anything like that. So I'm trying to figure out what evidence there was that there was a pop-up and what it said. Well, there was a testimony from EasyBank's CEO that that was how it worked. And he testified that there was a pop-up the first time there was a login to the portal. And I think this is probably better than click wrap, because my understanding of the click wrap cases is you're merely visiting a website. And by the act of visiting, you accept the terms and conditions. Here, they actually used the service. They used the service, and they used the service repeatedly. Where the terms and conditions, after they popped up, the terms and conditions were available. Was that the entire terms and conditions that were supposedly sent before? Or was that just, oh, and by the way, kind of like the contract, there's going to be some terms and conditions. What was actually communicated in that pop-up? My understanding is it was the entire terms and conditions. And right up front, there were two things right at the front of the terms and conditions that were very important. Number one, you're accepting these terms and conditions by accessing and using this website. Was it obvious that you were accepting terms and conditions that would affect the types of claims that are at issue in this case, involving the misuse of funds, as opposed to something related to your interaction with the company through the website? Well, I believe it was, because I believe the arbitration, first of all, I believe at the very beginning, it said that you're accepting the terms and conditions, the bank's terms and conditions. And the arbitration clause is comprehensive. But I want to make sure that I understand. I did not see anything in the record that showed exemplars of what these terms and conditions were and how they were attached. So, I mean, if you look at a website, usually you show up and it says, by using this website, you accept the terms and conditions. And it has terms and conditions like underlined in blue or something. And if you click on it, then you actually get the terms and conditions. And you can read them. But nobody, like nobody, the average consumer just sleeps right through that whole thing. And they could accept that they're giving away their firstborn child or something. I mean, my question is, was it one of those? Or was it one where the terms and conditions actually showed up like one, two, three, and so you've got like three pages of terms. It's the first thing you see. Do you know? I believe the entire thing appeared in a pop-up window. Okay. We do have what we have. We don't have an image of the website. What we have is what we have, and it's the testimony of EasyBank's CEO. Yeah. And, you know, I believe at a minimum that would require a remand and perhaps a trial in further development. And my time is up. I thank the court. Thank you, Mr. Egan. Mr. Gilder.  May it please the court. Justin Gilder for Applebee's BSI Group and International Business Solutions. We're here today because the lower court's denial of appellant's motion to compel was denied based on both a matter of law for their failure to properly incorporate by reference a secondary writing that contains an arbitration provision as well as the failure of BSI and IBS to ever assent to any arbitration provision. The record below is relatively barren for an important reason. The movements failed to carry their burden of proof. It is their burden of proof to show not only that there is a valid and enforceable arbitration agreement, but to even have a chance at an evidentiary hearing, they must show and carry a burden that there is a genuine issue of material fact. The earlier discussion highlights the absence of any genuine issue of material fact. In fact, the record explains that Solid's immutable record that contains a confirmation of an alleged click to I assent is merely the confirmation that EasyBank confirmed something was agreed to. That is the declaration of Mr. Todd Bourne. Is the agreement itself not in the record? The agreement is in the record. What I'm referring to here is the secondary argument of the click rap right now as to whether there is a genuine issue of material fact, as to whether there was even any presentation of this to BSI. If we speak about the actual agreement, the first step is relative to incorporation by reference, and there the district court properly concluded that the references in the signed agreements that BSI executed with EasyBank and that IBS executed with EasyBank fail to clearly. Counsel, you can raise that podium a little bit, and I think we can hear you a little bit better. Is that a little better? My old ears aren't working quite as well. Sorry about that. So the incorporation by reference issue refers to the writings that are signed, are in the record, and are signed. BSI signed an agreement with EasyBank, signed on April 14, 2022, and IBS signed an agreement in December of 2022. Each of those signed agreements contains a reference. The question before the district court was, is that a clear and unequivocal reference to the agreement entitled Spectrum Payments slash EasyBank Account Agreement, which then contains an arbitration provision purportedly between Evolve Bank and Trust and the plaintiff at police, each BSI and IBS. However, the references are anything but clear and unequivocal. The reference in the first agreement is to MSB's corporate account general terms and conditions. It's clear that Evolve is not an MSB, an MSB standing for a money service business. It is EasyBank, who is the money service business in this case. Solid also is neither a bank nor a money service business. They're a technology company. Were these delivered at the same time? The opposing counsel says terms and conditions and the agreements were delivered at the exact same time. Absolutely not, Your Honor. There is nothing in the record that was proffered by Movens to carry their burden of proof to show that these were indeed actually submitted and transmitted and delivered to BSI or IBS. The record shows that there is a WhatsApp screenshot, which is a messaging platform. That screenshot shows three documents allegedly sent to whom it's unclear from the actual screenshot. And one of those documents is clear. It is the actual signed agreement. It is shown. You see a preview image of that PDF with the term. The remaining two agreements are Word documents that are untitled. Well, the reason why I ask is, and I'm looking more towards is there any evidence. I know what your evidence says, and I kind of know what their evidence says. But I seem to recall that even under their evidence, and I'll ask opposing counsel about this, that they were delivered four days apart, that they were not delivered at the exact same time. But I might be wrong about that. The record is very messy in this case. Yes. So the days apart are referring to those screenshots on the WhatsApp. There's no other evidence that's introduced to suggest that these were sent. And I would return to Judge Erickson's point earlier, which is generally in terms of conditions, when you access a website, there would be some record. The movements are uniquely positioned to have this record in their possession. Whether it would be an email address used to first log in, whether it would be IP addresses, whether it would be actual evidence of the click and a scent, yet none of that has been introduced because presumably none of it exists. We were just informed that there are no screenshots of the website. Counsel for Sala just explained that. So we're left with a bare record because movements either don't have the documentary evidence or it never existed. It's our belief, and the declaration of the Chief Operating Officer of BSI and IBS states that he never saw the Spectrum Payments Easy Bank account agreement until it was attached to the motions to compel arbitration. So the movement has the burden of proof to show that there is not just a valid and enforceable agreement, which they clearly do not. So are you saying there's nothing to try in terms of, if we were to send this back for factual development, of whether there was an assent to the arbitration? We believe that the movement must first carry a burden to show that there's a genuine issue of material fact to give rise to an evidentiary hearing. Well, they say you assented and you say, no, we never got it. Right. So would there need to be factual development to determine the state of the facts? The Liberty Lobby precedent in the Supreme Court and the progeny there discuss the burdens of proof and standards, and a mere scintilla of evidence would be insufficient to carry their burden to show that there's a genuine issue of material fact. We believe that is the issue here, that they haven't even provided enough evidence to carry that burden to have a trial. So the testimony of the CEO that says this is what happened is not really evidence? It's of such light weight it can't be considered? Is that your mere scintilla argument there? I believe it can be considered, but I think a careful reading of the declarations that were submitted, both by Solid as well as EasyBank, reveal that they never get to the point that says, these terms and conditions were sent to this person on this date and agreed to. And, in fact, if we look at the actual timeline, it also belies their argument. They claim that there's an agreement and a reference on April 14th agreed. There's a signed agreement on April 14th. Well, isn't their argument basically the fact that you took the money, used the money, and entered into this transaction as demonstration of your assent? Well, so they used the account, but the money was certainly taken by, we argue, the movement. So it's Appalese, BSI, and IBS that are the plaintiffs underlying who have lost $9 million as a result of the actions of one or more of the defendant appellants. What about the click-wrap slash browse-wrap? The click-wrap, was there actually a click that said I assent? Was that the evidence at least presented by the other side? So that's where a careful reading of the declaration is important, because SOLID, their declaration of Mr. Todd Boring is very careful, and I applaud them on their carefulness. Mr. Boring states that the record that they maintain shows that EasyBank confirmed that BSI agreed to terms. So there's no statement from SOLID which maintains the technological interface that connects to Evolve Bank and Trust and end users, and we believe was white-labeled by EasyBank. They don't make a claim that the assent was clicked by BSI. But it would still be a browse-wrap, it's my understanding, because if the entire terms and conditions came up, the first paragraph of it, I think, said something like, by continuing to bank with us, you have accepted the terms and conditions. And so the panel, I wrote a decision for a panel, I think it was Foster versus Walmart, that talked about what it takes to make a genuine issue of material fact when you have this technological assent. And I'm just wondering, we concluded there that you needed a trial. We needed to set it back for at least a mini-trial on that particular issue. I wonder whether the same thing applies here, because there seems to be a disagreement about that pop-up, and I want to give you a chance to address that. Right. I think that's a very important case to call out, Your Honor. And in that case, it was remanded for an evidentiary hearing. Yet, on the limited record that existed when the Circuit Court of Appeals decided that issue, there was evidence of what did the pop-up say? There was evidence of who accessed that. And importantly, in that case, all of this started with a gift card that was actually purchased by individuals that references the site. So here, in this case, the evidence that was submitted by movements to carry their burden to trigger this evidentiary hearing failed to create a genuine issue of material fact. The declarations that are submitted by solids say, look at EasyBank. EasyBank confirmed that BSI accepted these. And then BSI says, a third party, Aztec Business Solutions, sent these documents. Look at the screenshot, and the screenshot shows untitled Word documents that are also sent before the effective date of the terms and conditions that were allegedly agreed to, which I believe belies their entire argument. They state that an agreement was made on April 14th referencing general terms and conditions, and then the Spectrum Payments EasyBank account agreement relates an effective date after April 14th, June 1st. Yeah, because they've got attached a screenshot there where it says on June 1st, well, it's not the screenshot, it's the captured data page from the screenshot. So basically, we know that prior to June 1st, when this account was actually fully activated, that somebody went through, who was a FinTech customer, at least as Mr. Borer alleges, that they created the account, that they clicked on the thing that said, accepted the terms of the account agreement as true. So they clicked the true box, right? And that's really all we know about that. We know that happened on June 1st, right? Right, and what that declaration says is that EasyBank did that. EasyBank confirmed something on those dates. And the issue being, there's no evidence that's been submitted that BSI or IBS did that. We don't have any emails that are sent to representatives of BSI. We don't have any email that indicate that that step of that process was a BSI representative. So Solid points to EasyBank and says, EasyBank confirmed that BSI agreed to these. And then if you look at EasyBank... Ties to an account number, does that mean anything? So that's actually the account number that then gets created at Evolve. So it's created after? It's created after that, yes, is my understanding. I think a really important context here is banking as a service. Because I think one would assume when you get a bank account, you may go into your bank and you may interact with a bank and therefore, yes, of course you knew you were getting a bank account that may have an agreement. Here in this case, Solid has created a technological interface with Evolve, who's the sponsor bank for this banking as a service platform. Solid then has a contractual relationship with another entity, EasyBank. And Solid says, we require our clients to do the following things. We don't know whether they did them or not, but they require them. And then EasyBank, this again, another layer in between it, was going out and marketing its ability to obtain accounts. But a few things that happened there, they're dependent on EasyBank to do the things that they're required to do, and there's just no evidence that movements have submitted to say that they actually did them, which is fatal. But the district court ruled on this. What you're describing, this arrangement and the actual processing here, we're hearing the two sides of you explain your views on it, but nobody's pointing us to a decision resolving these things. As I understand your argument, you're saying the district court's resolution could be interpreted as a statement that the proof of the appellant or the burden on the appellant was not met. Yes, I believe that it can be, and also I believe that this court sitting de novo can consider that the evidence that movements have submitted fails as a matter of law to create a genuine issue of material fact. One would have expected it to be much easier to submit evidence that shows a party has agreed to terms. The fact that there are none of the things that we would expect to be submitted is telling. There are no screenshots of these. Does it matter that Judge Miller told us that there are factual disputes about whether the terms of the Evolve Agreement were known or easily available to the parties, but this issue need not be addressed because the references are not clear and unequivocal? He never even actually got to this point. Can we really fairly read into it that there is no material question of fact? I believe that on that issue, that's really the second part of a different test, and that test is whether there is an incorporation by reference, and that requires both first a clear and unequivocal reference and known or easily accessible. They don't make the argument that, oh, even if they weren't... So where in his four-page opinion does he talk about the facts that we're talking about here? Because when I looked at his four-page opinion, the only place I could think that it was in is he saying, well, there are these other facts about what was delivered and when it was delivered, but I don't need to worry about them because you drowned far from shore when you couldn't get past the clear and unequivocal incorporation by reference. Is that not what that opinion says? Does it say something more than that? No, I believe it does only say that, and I do believe that the record is barren enough that this Court sitting in de novo review can consider and dismiss this. I get it. So all you're saying is that look at it. You have as much as Judge Miller had, and whatever Judge Miller had, it was enough to show that those guys really created a question of fact that was worthy of trial. Correct. Thank you. All right. I'm out of time. Thank you, Your Honors. Thank you, Mr. Gilder. Mr. Davis, I believe you had a little time left, less than a minute. How much trouble do we have? That's it. Just 18 seconds. I can be very brief. Okay, go ahead. We'll give you a full minute. Thank you. We've engaged quite a bit. I'll try to beat it. I messed up the opening here anyway, so we'll give you a full minute. I appreciate that. I can be very brief. There is discussion from BSI and IBS about the evidence that is missing. I would agree. I would agree. This record is not where it needs to be and where it needs to be developed. I would submit it needs to be sent back. The judge, the court below, did not consider any of the evidence outside of the claim of incorporation. But in terms of the evidence that is not there, yes, there is no image of the website or of the portal. But I think we have to go back to Mr. Javier Gochi's declaration. And his declaration does not meet the evidence that was placed in the record with EasyBank's reply about the pop-up and the presence of the terms and conditions in the portal. There's testimony, conclusory testimony, while I never received it, but Mr. Gochi does not state that he ever even was the person for IBS or BSI who ever visited the portal, let alone that everybody in the company who visited the portal never saw that pop-up and never saw the terms or conditions. So I believe at a minimum, we believe at a minimum the court should remand this case for further development. And unless there's any questions, I will sit down. Thank you, Mr. Higgins. Thank you. The court thanks all counsel for participation in argument before the court this morning. We'll take the case under advisement.